MICHAEL J. HEYMAN
United States Attorney

WILLIAM R. REED
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
709 W. 9th St., Room 937
Juneau, AK 99802
Phone: (907) 796-0404
Email: william.r.reed@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| vs. | No. 1:24-CR-00003-TMB-MMS |
| KADEN AUGUST OLLILA, | |
| Defendant. | |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION** ................................................................................**240 MONTHS**
**SUPERVISED RELEASE** ...................................................................................**LIFE**
**SPECIAL ASSESSMENT**........................................................ **$100 PER COUNT**
**RESTITUTION** ...................................................................................................**N/A**
**FINE**........................................................................................ **NO FINE RECOMMENDED**

**FACTS**

In January 2024, Homeland Security Investigations (HSI) that someone had

been uploading pornographic photos of teenage minors to various internet

websites. An HSI agent's investigation revealed that Kaden Ollila used different usernames and profiles to upload and distribute these images on different pornographic websites. Several of the victims were from Juneau, Alaska.

On or about January 19, 2024, MV2[1] received pornographic images and videos from a Textnow number that belonged to Ollila. Textnow is an application that provides a number that can be used to call and text over a Wi-Fi internet signal from an electronic device such as a laptop or cellular phone. Ollila sent three videos to MV2 of MV2 engaged in sexual acts that occurred when she was 14 years old. Ollila also sent MV2 pornographic images of at least two other minor females. MV2 was in Juneau, Alaska, when she received the images and videos.

On or about January 24 and 25, 2024, Ollila contacted MV5[2] with a series of messages by cell phone communication through TikTok. TikTok uses an electronic device's data plan or internet Wi-Fi to transmit video media and messaging. In his messages to MV5, Ollila told MV5 that he and other men masturbate and ejaculate onto computer screens with images of MV5 displayed on the screen. Ollila sent MV5 a video of such an act. Ollila sent MV5 messages about raping her, having sex with her while she is crying, and other very graphic and sexually violent

---

[1] "MV2" refers to minor victim 2. Although the victim was a minor when the images and videos were created, she is now an adult.
[2] "MV5" was an adult at the time of the cyberstalking offense.

U.S. v. OLLILA
1:24-CR-00003-TMB-MMS

messages. The messaging, which included numerous images of Ollila ejaculating on a photo of MV5, continued until on or about February 3, 2024. MV5 was in Juneau, Alaska, when she received the images and messages.

On or about February 4 and 5, 2024, Ollila harassed MV1[3] by sending her multiple videos and images through Instagram where he engaged in masturbation with images with MV1's face depicted in the background on a computer screen. Instagram is a free-access electronic communication social networking service that is accessible through its website and its mobile application. Ollila also obtained sexually explicit photos of MV1 that were taken when she was approximately 14-years old and harassed MV1 with by sending them to MV1 through Instagram. MV1 was in Juneau, Alaska, when she received the videos and images.

A search of Ollila's electronic devices yielded numerous child pornography videos and images.

**GUIDELINES CALCULATION**

The United States has no objections to the final presentence report and guideline calculation.

---

3   MV1 was an adult at the time of the cyberstalking offense.

## STATUTORY CRITERIA AND RECOMMENDED SENTENCE

**1. Nature and circumstances of the offense**

"[A] sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Nichols v. United Sates*, 511 U.S. 738, 747 (1994). "No limitation shall be placed on information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Ollila used social media to harass and stalk multiple victims. The manner and extent of his harassment is shocking. *See* PSR for details. Ollila's threats of sexual assault demonstrates that he presents a danger to the community that cannot be ignored.

Ollila distributed child pornography and maintained a large collection of child pornography. Ollila also created "morphed" images using the head and faces of adults and minors. The computer-generated "morphed" images made the individuals appear to be nude.

Undersigned counsel has met and conferred with the Homeland Security Investigations Special Agent who investigated this matter. According to the agent, approximately there are approximately 61 minors from Southeast Alaska and Northern California who are victims of Ollila's conduct. The agent recovered child pornography images of these individuals from Ollila's two cell phones and his Asus Chromebook computer.

The case agent reports that at least 44 additional minors and 51 adults, who arguably were not victims of a federal offense, but were otherwise affected by Ollila's conduct, including activity where:

- Ollila possessed and traded online nude images that were both real and AI generated
- Ollila produced images and videos of himself and others masturbating to images of these individuals
- Ollila uploaded nude images to pornography sites and social media, sometimes with an address or city of residence of the individual
- Ollila sent nude images to individuals and their friends and family
- Ollila sent violent sexual assault dialogue and threats to individuals
- Ollila posted soiled underwear on pornography sites and social media with the name and photo of an individual
- Ollila discussed with another subject a plan to rape an individual in a wooded area in Juneau where the individual would be beaten and raped repeatedly
- Ollila made threats to send individuals' nude images to their family and friends
- Ollila sent nude images of individuals to their parents, significant others, and friends

## 2. History and characteristics of the defendant

Ollila, who is only 21-years old, has no criminal history. Nevertheless, his child pornography distribution and cyberstalking offenses cannot be viewed as isolated events. His behavior towards numerous victims took place over an extended period.

## 3. The seriousness of the offense and just punishment

As set forth above and in the presentence investigation report, Ollila's crimes are serious. Ollila was far from passive in committing his crimes. Ollila's crimes were "extremely disturbing." ECF No. 65 (Sealed Sentencing Recommendation), ¶ 3. As noted by the probation officer, Ollila "has deviant fantasies of rape, gang rape, and torture, and enjoys the 'thrill' and sexual gratification of causing others pain." *Id*. The sentencing statutes and the guidelines provide the Court with ample latitude to address the seriousness of the offenses. "[O]nce there is a conviction, the sentencing judge is possessed of extraordinarily broad powers to find the facts that will drive the sentence." *United States v. Fitch*, 659 F.3d 788, 794 (9th Cir. 2011).

## 4. Adequate deterrence, protection of the public from further crimes, avoidance of unwarranted disparities

Ollila's undisputed guideline range is 324-405 months. However, the available statutory maximum sentence works to his advantage by reducing the maximum available sentence to 240 months – more than eight years below the low end of his applicable guideline range. The 240-month statutory cap becomes the guideline range, which provides Ollila a windfall in terms of sentencing exposure. "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of

U.S. v. OLLILA
1:24-CR-00003-TMB-MMS

sentences that would be reasonable in the particular circumstances." *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (*en banc*). Moreover, "when a district judge imposes a sentence within the Guidelines range, it is probable that the sentence is reasonable, because the judge's application of the § 3553(a) factors accords with the Sentencing Commission's independent application of those factors in the 'mine run of cases.'" *United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010) (internal citation and quotation marks omitted).

**CONCLUSION**

For all of the above-discussed reasons, the government concurs with the probation officer and recommends a sentence of 240 months' imprisonment.

RESPECTFULLY SUBMITTED July 23, 2025 at Juneau, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ William R. Reed
WILLIAM R. REED
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2025 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ William R. Reed